IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON H. GANTZ,<br><br>        Petitioner,<br><br>  v.<br><br>ARTURO FARO, Probation Department,<br><br>        Respondent.<br>_____ / | No. C05-02706 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Before the Court is Petitioner Gordon H. Gantz's ("Petitioner" or "Gantz") Second Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Docket No. 1.) The Court ordered Respondent to show cause as to why the Petition should not be granted on the basis of Petitioner's cognizable claims. Respondent filed an answer accompanied by a memorandum and exhibits contending that the Petition should be denied. Petitioner did not file a traverse. The matter is submitted. For the following reasons, the Court **DENIES** the petition for a writ of habeas corpus.

## PROCEDURAL BACKGROUND

On February 19, 2003, a jury convicted Petitioner of making a false bomb threat, in violation of California Penal Code § 148.1(c). The state trial court sentenced Petitioner to three years of probation.

Petitioner appealed his conviction to the California Court of Appeal, First Appellate District, which affirmed the conviction in an unpublished, reasoned opinion filed April 6, 2005. On June 15, 2005, the California Supreme Court denied review. On July 1, 2005, Petitioner filed the instant petition.

## FACTUAL BACKGROUND

**I.     The Underlying Offenses**

The facts underlying the charged offenses are set forth in the California Court of Appeal's opinion and are undisputed by both parties. (*See* Resp.'s Exh. 5.)

> Around midnight on November 13, 2002, Lawrence McCoy experienced a disturbing encounter on the San Francisco Muni Underground. McCoy boarded a trolley car at the Castro Street Station. There McCoy encountered defendant, who was "yelling and making . . . threatening comments" directed at McCoy and other passengers. The comments were anti-Semitic and anti-Catholic. Defendant spoke of "killing the Pope, killing Jews, or killing Roman Catholics." Defendant, described by McCoy as "older," seemed very drunk. "He was arguing with everybody. He was standing up and pointing to people . . . just mumbling a bunch of stuff that made no sense."
>
> McCoy became angry and followed defendant off the trolley at the stop at Fifth and Market. He followed defendant to O'Farrell Street near Cyril Magnin Street, where McCoy saw defendant make a call on a pay phone. He heard defendant say into the phone, "Fuck you bitch, or something like that."
>
> McCoy watched defendant hang up and walk "a half a block to a hotel at 516 O'Farrell. McCoy followed him and argued with him, because defendant had threatened him on Muni.
>
> Meanwhile, other facts develop from another perspective. Around 12:30 a.m. on November 13, 2002, the night desk clerk at the Layne Hotel, Dennis Reindel, received a phone call. The Layne Hotel is at 545 Jones Street, right around the corner from the Shawmut Hotel at 516 O'Farrell. The caller told Reindel "that there is a bomb in the hotel and it's going to go off in 15 minutes." The caller was male, with a "high-pitched voice, [that of an] older gentleman, somewhat slurred, under the influence of something." Reindel became angry and yelled at the caller, who yelled back, "Fuck you, you son of a bitch," and hung up.
>
> Reindel called the police. Officers Muselman and Michaud were dispatched to the Layne Hotel. On the way they stopped at the Shawmut Hotel, where they knew defendant lived. They saw defendant walking into the Shawmut Hotel, and followed him in.
>
> McCoy, who was still nearby after his argument with defendant, came up to the Shawmut Hotel door and waved Michaud outside. Muselman stayed inside with defendant, who was "very loud, ranting nonstop." Outside, McCoy told Michaud about his experience with defendant on the Muni trolley car. McCoy also identified defendant to Michaud.
>
> Muselman and Michaud took defendant to the Layne Hotel in their patrol car. Muselman stayed with defendant in the car while Michaud went inside and spoke to Reindel. Michaud told Reindel he was going to go back to the patrol car and call Reindel on a cell phone, and see if Reindel could recognize a voice.
>
> Back in the car, Michaud called Reindel on a cell phone and held the phone up to defendant, who was talking nonstop. Reindel listened to a defendant's voice and recognized it immediately. It was the same voice that had made the bomb threat. Reindel testified, "It sounded exactly the same, the same high pitch, slurred . . . I could just tell it was the same." Michaud testified defendant had a "unique voice."

2

*People v. Gantz*, No. A103072, 2005 WL 768762 (Cal. Ct. App. Apr. 6, 2005), at *1-2 (footnotes omitted).

## II.   The Trial

At trial, in addition to the evidence set forth above, the trial court admitted evidence of a prior uncharged criminal act through the testimony of Pushpa Patel, whose family owned and operated the Layne Hotel. The Court of Appeal summarized Mrs. Patel's testimony as the following.

> [O]n November 24, 1999, she parked her car on Jones Street and was walking uphill toward the Layne Hotel with her children. An older white male called out to her. She identified the man as defendant. Ms. Patel became concerned because of what the man said, grabbed her children, and ran into the Layne Hotel. Later that day a man called the hotel. The man told Ms. Patel he was going to throw a Molotov cocktail into the hotel. She recognized the voice as belonging to the man who called out to her on the street — defendant. Defendant had made several calls to the hotel.

*Gantz*, 2005 WL 768762, at *3. The trial court admitted this evidence on the issues of motive, identity and intent and instructed the jury accordingly. (Resp.'s Exh. 8 at 209.)

The trial court further provided the jury with CALCIC No. 3.30, Concurrence of Act and General Criminal Intent, stating:

> In the crime of Penal Code section 148.1, subsection (c), making a false bomb threat, there must exist the union or joint operation of act or conduct and general criminal intent. General criminal intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be an act or crime, he is acting with general criminal intent, even though he may not know that his act or conduct was unlawful.

(*See* Resp.'s Exh. 8 at 214.) The trial court then instructed the jury, pursuant to California Penal Code § 148.1(c):

> As to the false bomb report, any person who maliciously informs any other person that a bomb or other explosive [has] been or will be placed or secreted in any public or private place, knowing that the information is false, is guilty of making a false bomb report. In order to prove such a crime, each of the following elements must be proved:
> 1. A person informed another person that a bomb or other explosive has been or will be secreted in any public or private place.
> 2. The person made such a statement with malicious intent.

3

    3. The words malice and maliciously mean an intent to vex, annoy, or injure another person, or an intent to do a wrongful act.
    3. The person knew the information was false.

(*See id.* at 214-15.)

On February 19, 2003 the jury found Petitioner guilty of making a false bomb threat, in violation of California Penal Code § 148.1(c).

## LEGAL STANDARD

This Court will entertain a petition for writ of habeas corpus "[o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, this Court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" *Id*. § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court's decision is contrary to federal law if it "failed to apply the correct controlling authority from the Supreme Court." *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2001) (quoting *Shackleford v. Hubbard,* 234 F.3d 1072, 1077 (2000); *see also Williams*, 529 U.S. at 405–07; *LaJoie v. Thompson*, 217 F.3d 663, 667–68 (9th Cir. 2000). If a state court directly contravenes a Supreme Court decision on a question of law, or if it reaches a conclusion that contradicts a Supreme Court decision with materially indistinguishable facts, it is contrary to federal law. *Williams*, 529 U.S. at 413.

A federal court making the "unreasonable application" inquiry in a habeas case should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. The "objectively unreasonable" standard does not

4

equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citation omitted). This standard of review, however, does not relieve a federal court from its duty to examine and analyze the state court's application of federal law.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie*, 217 F.3d at 669 n. 7. If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

## ANALYSIS

**I.    Jury Instruction**

Petitioner argues that he was deprived of due process because the trial court instructed the jury on general intent under CALJIC No. 3.30. This, Petitioner contends, permitted the jury to convict him of making a false bomb threat without finding beyond a reasonable doubt that he had acted maliciously, as is required under Penal Code § 148.1(c). Petitioner is not entitled to federal habeas relief on this claim.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v.*

*Kibbe*, 431 U.S. 145, 154 (1977)).

While the Court of Appeal did not discuss Petitioner's federal right to due process, it did consider and reject Petitioner's claim that the CALJIC No. 3.30 instruction, which focused on general intent, undermined the requirement that the jury find that petitioner acted maliciously.[1] Specifically, the Court of Appeal held that Petitioner's claim was unavailing because malice is a sub-set of general intent. Thus, the jury instructions did not relieve the prosecution of its burden of proving malice and were not cause for jury confusion. As the Court of Appeal stated:

> We do agree with defendant that the prosecution had the burden of proving that he made the bomb threat maliciously. (See *People v. Cheaves* (2003) 113 Cal.App.4th 445, 453.) But we do not agree that CALJIC No. 3.30, supra, in any way relieved the People of this burden. The jury was specifically instructed that it had to find malice to convict defendant. They did so, properly, in the context of the general intent instruction — as malice is really a subset of general intent. (See *People v. Atkins* (2001) 25 Cal.4th 76, 84-86.) And defendant did not dispute the threat was made with malice — i.e., was not a prank or joke. Defendant simply claimed he did not make the threat, and the desk clerk's voice identification was intrinsically suspect.

(*See* Resp.'s Exh. 5 at 5.)

Here, to make out his due process claim, Petitioner again assumes that malice requires elements of proof beyond that required for a general intent crime. However, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988). Here, as noted above, the Court of Appeal concluded, based on California case law, that malice is a subset of general intent in California. This holding is binding on the Court. (*See* Resp.'s Exh. 5 at 5.) Petitioner cannot, therefore, show that malice requires elements of proof beyond that required for a general intent crime.

Still, the Court reviews the record to determine if the prosecution was relieved of its

---

[1] The Court of Appeal also held that the issue was waived because Petitioner failed to object to CALJIC No. 3.30 in the trial court.

6

burden of proving every element of the crime beyond a reasonable doubt such that the instruction infected the entire trial and violated Petitioner's right to due process. *See Estelle*, 502 U.S. 62, 72 (1991). Here, the Court cannot so find. At trial the jury was instructed that a defendant in a criminal action is presumed innocent until the contrary is proven and was instructed twice on reasonable doubt. (*See* Resp.'s Exh. 8 at 211, 214.) The trial court also instructed the jury on the elements of the crime, which included the requirement of malice and a definition of malice. There is no indication that the jury was confused by the instructions or had any impression that the prosecution was relieved of its burden of proving malice. Therefore, given the totality of the record in this matter and the Court of Appeal's conclusion that malice is a sub-set of general intent, the Court cannot find that the jury instruction violated Petitioner's due process rights. The Court of Appeal's analysis was not, therefore, contrary to, or an unreasonable application of, federal law.

## II.    Admission of Mrs. Patel's Testimony

Petitioner next argues that the trial court erred in admitting Mrs. Patel's testimony of Petitioner's prior bad act because it did not go to show identity, intent or motive and was more prejudicial than probative. Petitioner is not entitled to federal habeas relief on this claim.

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Henry*, 197 F.3d at 1031; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state

7

standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. *See id.* (citing *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983), *cert. denied*, 469 U.S. 838 (1984)).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990.  Thus, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal*, 926 F.2d at 920.

Here, the trial court admitted Mrs. Patel's testimony under California Evidence Code § 1101, which provides that "evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion." Cal. Evid. Code § 1101(a).  Section 1101, however, does not make inadmissible:

> evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act.

Cal. Evid. Code § 1101(b).  The trial court also gave a limiting instruction, stating that the evidence was not to be considered to "prove that Defendant is a person of bad character, or that he has a disposition to commit the crime," but instead was to be considered only insofar as it weighed on Defendant's plan, intent, identity or motive.  (*See* Resp.'s Exh. 8 at 209.)

The admission of this evidence, especially in light of the limiting instruction, did not violate Petitioner's due process rights. *See Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (holding that the admission of uncharged crimes does not violate due process where the trial court gave limiting instruction to jury, jury was able to weigh witness' credibility and evidence was relevant to defendant's intent).  The Court of Appeal correctly explained why permissible inferences regarding Petitioner's intent could be drawn from Mrs. Patel's testimony.  On this issue the Court of Appeal noted:

8

> [t]he Molotov cocktail threat is sufficiently similar to the telephone bomb threat. They were both made by an older man with a unique voice, threatening a similar firebombing. Ms. Patel positively identified the voice as belonging to defendant. The two threats were made to the same hotel, over which defendant seemed fixated. His threat to firebomb the Layne Hotel was certainly sufficiently similar to his telephonic threat that there was a bomb in that same hotel. Only a few years earlier, the Molotov cocktail threat was not too remote in time. And the probative value of the evidence substantially outweighs its prejudicial impact, within the meaning of Evidence Code section 352.

*Gantz*, 2005 WL 768762, at *7. In addition, the jury was able to weigh Mrs. Patel's credibility. Furthermore, the trial court gave the jury a limiting instruction as to the proper purpose of this evidence. *See Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997) (holding that juries are presumed to follow the trial court's limiting instructions with respect to purposes for which evidence is admitted).

Because the jury could draw permissible inferences from Mrs. Patel's testimony regarding, at a minimum, Petitioner's intent, the admission of such evidence did not violate Petitioner's right to due process. There is nothing in the record that indicates that the admission was arbitrary or so prejudicial as to render the trial fundamentally unfair. Instead, the trial court considered the evidence and admitted it with an appropriate limiting instruction. On this claim, therefore, the California Court of Appeal's denial of Petitioner's claim was not contrary to, or an unreasonable application of, federal law.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Petition for a Writ of Habeas Corpus. The Clerk of the Court is directed to close the file.

**IT IS SO ORDERED.**

Dated: April 25, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GANTZ,

        Plaintiff,

  v.

ARTURO FARO et al,

        Defendant.

Case Number: CV05-02706 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 25, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Gordon H. Gantz
41 Sutter STreet # 1853
San Francisco, CA 94104-4905

Dated: April 25, 2008

*Jennifer Ottolini*
Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk